# Supreme Court of Texas

No. 22-0078

In re Mariam Ayad,

*Relator*

On Petition for Writ of Mandamus

**PER CURIAM**

This mandamus proceeding concerns a premarital agreement to resolve disputes by binding arbitration under religious law. Because the trial court ordered arbitration before determining whether the agreement is valid and enforceable as required by Sections 6.6015 and 153.00715 of the Family Code, we conditionally grant relief.

Relator Salma Mariam Ayad married real party in interest Ayad Hashim Latif in 2008. In connection with their marriage, they signed two documents entitled "Marriage Contract" and "Islamic Pre-Nuptial Agreement" (the Agreement). The former is not at issue here, but Ayad resists enforcement of the latter on a variety of grounds.

In the Agreement, the parties recite their "belief that Islam . . . is binding on [them] in all spheres of life." As relevant here, the Agreement provides that "[a]ny conflict which may arise between the husband and the wife will be resolved according to the Qur'an, Sunnah, and Islamic

Law in a Muslim court, or in [its] absence by a Fiqh Panel." The Agreement then explains how the members of the three-person panel will be selected and provides that the panel "will not represent the parties in conflict, but rather, serve as impartial arbitrators and judges, guided by Islamic Law and [its] principles." According to the Agreement, "the majority decision of the Fiqh Panel will be binding and final."

Although Ayad's signature appears on the Agreement, she alleges that she did not become aware of its contents—or even see it—until she and Latif began experiencing marital difficulties in 2020. This, Ayad asserts, is when she learned she had been "defrauded" into signing a premarital agreement that violates her fundamental rights. According to Ayad, she received the two documents in a stack with the Marriage Contract on top, and she thought the Agreement was another copy of the Marriage Contract.

In January 2021, Ayad sued for divorce and sought to be appointed joint managing conservator of the couple's six-year-old son. Latif filed his own counterpetition for divorce and moved to enforce the Agreement. Ayad raised multiple challenges to enforcement, including that: the term "Islamic Law" was too indefinite; the Agreement was void because it violated public policy; Latif's previous breaches of the Agreement had excused Ayad from performing; and the Agreement was unconscionable.

The trial court held a hearing on Latif's motion to enforce, focusing on whether the reference to Islamic law was sufficiently ambiguous to render the Agreement unenforceable. An imam testified

2

as an expert on Latif's behalf, but the trial court refused to allow Ayad to testify on the term's ambiguity, which it concluded was a "legal question."[1] Shortly thereafter, the trial court concluded it would order the parties to arbitrate under the Agreement.

Ayad then filed a motion to vacate or reconsider the court's ruling on Latif's motion to enforce, as well as a motion for separate trial of her challenges to the enforcement and validity of the Agreement. The court held a second hearing in which it gave each party twenty minutes to address solely whether the Agreement was entered into voluntarily. Both Ayad and Latif testified, as well as an expert for Ayad.

Without addressing whether the Agreement was valid and enforceable, the trial court concluded that it "ha[d] no discretion" under the Texas General Arbitration Act "but to enforce the [A]greement . . . and refer the parties to arbitration per the terms of their [A]greement." In its referral order, the court observed that if an eventual arbitration award was based on foreign law, it would review the award under Texas

---

[1] Generally, an expert may not give testimony to a trier of fact regarding a pure question of law. *See* TEX. R. EVID. 702-704; *Carr v. Radkey*, 393 S.W.2d 806, 813 (Tex. 1965); *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When the substance of the law of a foreign jurisdiction is in dispute, however, that law is proven to the court under Texas Rule of Evidence 203 through a process that "resembles the presentment of evidence but which ultimately is decided as a question of law." *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V.*, 49 S.W.3d 347, 351 (Tex. 2001). The parties disagree about whether the Islamic law to which the Agreement refers is the law of a foreign jurisdiction or should be treated as analogous to such law in applying our statutes and rules. But neither that question nor the propriety of the trial court's refusal to allow Ayad to testify have been fully briefed in this Court. We therefore express no view on those matters, which the parties remain free to litigate further in the trial court.

3

Rule of Civil Procedure 308b "to determine whether the award violates constitutional rights or public policy." The court also noted that "upon proper application of a party" under Section 153.0071 of the Family Code, it would hold a hearing to determine whether the arbitration award was not in the best interest of the parties' child. The trial court stayed all proceedings pending arbitration in June 2021, and it declined to hold a hearing on the parties' requests for temporary orders. The court of appeals denied Ayad's request for mandamus relief in a nonsubstantive opinion. ___ S.W.3d ___, 2022 WL 68222, at *1 (Tex. App.—Dallas Jan. 5, 2022).

Ayad now seeks mandamus relief from this Court. Because we agree with Ayad that the trial court was statutorily required to hear and determine her challenges to the Agreement's validity and enforceability before referring the parties' disputes to arbitration, we conditionally grant her petition for writ of mandamus. We do not reach the merits of her challenges to the validity and enforceability of the Agreement, which the trial court should try in the first instance.

The Family Code provides that a trial court "may" refer suits for dissolution of marriage and suits affecting the parent-child relationship to either binding or nonbinding arbitration based on the parties' written agreement. TEX. FAM. CODE §§ 6.601(a), 153.0071(a). This general principle is subject to certain limits both before and after arbitration, however.

Before arbitration, if a party to a suit for dissolution of marriage or suit affecting the parent-child relationship "asserts that the contract containing the agreement to arbitrate is not valid or enforceable," then

4

"notwithstanding any provision of the contract to the contrary, *the court* shall try the issue promptly and may order arbitration *only if* the court determines that the contract containing the agreement to arbitrate is valid and enforceable against the party seeking to avoid arbitration." *Id.* §§ 6.6015(a), 153.00715(a) (emphases added).[2] Notably, these unique statutes alter the ordinary rule regarding who decides certain disputes that arise in motions to compel arbitration. Under the ordinary rule, challenges to the validity or enforceability of the contract containing the agreement to arbitrate are decided by the arbitrator. *Cf. In re Morgan Stanley & Co.*, 293 S.W.3d 182, 185-87 (Tex. 2009).

After arbitration, "the court shall render an order reflecting the arbitrator's award" as to issues regarding the dissolution of the marriage, TEX. FAM. CODE § 6.601(b), and it shall do likewise for issues regarding the parent-child relationship "unless the court determines at a non-jury hearing that the award is not in the best interest of the child," *id.* § 153.0071(b). In addition, if the arbitration award is based on foreign law, a party may oppose enforcement of the award on the ground that it "violates constitutional rights or public policy." TEX. R. CIV. P. 308b(d)(2); *see also* TEX. GOV'T CODE § 22.0041. Regardless of whether enforcement is opposed, the court must hold a hearing and issue findings

---

[2] On rehearing, Latif argues that Sections 6.6015 and 153.00715, enacted in 2011, are inapplicable to the parties' 2008 agreement. *See* Act of May 27, 2011, 82d Leg., R.S., ch. 1088, § 3, 2011 Tex. Gen. Laws 2824, 2825. Ayad responds, in part, that we would have reached the same result even without those two statutory provisions. We need not resolve these questions arising for the first time on rehearing because throughout this litigation the parties' positions regarding the two provisions have assumed their application. Accordingly, the trial court should apply those provisions in further proceedings in this case.

5

of fact and conclusions of law regarding whether to enforce the award. TEX. R. CIV. P. 308b(f).

Here, the trial court recognized that Section 153.0071 and Rule 308b would be relevant after arbitration. But the court incorrectly concluded in its order that it "must refer parties to arbitration when it is contracted by the parties," and that it had "no discretion but to enforce the [A]greement." As explained above, Sections 6.6015 and 153.00715 provide otherwise: the court "shall try the issue" and "may order arbitration only if [it] determines that the contract . . . is valid and enforceable." TEX. FAM. CODE §§ 6.6015(a), 153.00715(a). The trial court's legal error was a clear abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

In the trial court, Ayad raised multiple challenges to the validity and enforceability of the Agreement. During the hearing on Latif's motion to enforce, the trial court did receive testimony from Latif's expert witness regarding Ayad's contention that the Agreement's reference to Islamic law was ambiguous and thus unenforceable. And during the hearing on Ayad's motion to reconsider, the trial court gave each party twenty minutes to present arguments and evidence on the sole issue of voluntariness.

The trial court did not determine either issue in its order compelling arbitration, however, because it incorrectly concluded it was without discretion to do so.[3] Nor is there any indication in the record

---

[3] Because the order was expressly based on a legal error, we do not imply that the trial court made findings in support of its order on these issues.

6

that the court tried Ayad's additional challenges that the Agreement itself was void as against public policy and unconscionable. Instead, the court indicated that it would determine following arbitration whether the terms of any award made under the Agreement violate public policy.

This procedure runs afoul of Sections 6.6015 and 153.00715, which are expressly designed to avoid subjecting parties in divorce cases to arbitration when the contract containing the agreement to arbitrate is invalid or unenforceable. To comply with these statutes, a trial court must: (1) try the issue by giving each party an opportunity to be heard on all validity or enforceability challenges to the contract containing the arbitration clause, as well as an opportunity to offer evidence concerning any factual disputes or questions of foreign law material to the challenges; and (2) decide the challenges before ordering arbitration.

In sum, when a party to a divorce or child-custody proceeding has challenged the validity or enforceability of an agreement containing an arbitration provision, the trial court cannot order binding arbitration without first "try[ing]" the issues of validity or enforceability and "determin[ing]" that the agreement is valid and enforceable. TEX. FAM. CODE §§ 6.6015(a), 153.00715(a). Because the trial court did not comply with Sections 6.6015 and 153.00715, it clearly abused its discretion.

Latif contends that Ayad is not entitled to mandamus relief, however, because she has another adequate remedy. *See In re Murrin Bros. 1885*, 603 S.W.3d 53, 56 (Tex. 2019). In particular, he emphasizes

_____

*See Burford v. Pounders*, 199 S.W.2d 141, 145 (Tex. 1947); *Jones v. Smith*, 291 S.W.3d 549, 553 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

7

that Rule 308b provides for post-arbitration challenges to arbitration awards based on foreign law. *See* TEX. R. CIV. P. 308b(d)(2).

It is not clear, however, that Rule 308b provides a post-arbitration mechanism for considering all of Ayad's validity and enforceability challenges to the Agreement. For example, even if Ayad could use Rule 308b to challenge the enforceability of a future arbitration award on public policy grounds, the challenge Ayad brings here is different: she contends that the Agreement containing the arbitration clause itself violates public policy.

Moreover, the Legislature expressly provided in Sections 6.6015 and 153.00715 that validity and enforceability challenges to agreements containing an arbitration clause must be determined prior to arbitration. In the divorce context, a post-arbitration proceeding is not an adequate substitute for this statutory pre-arbitration remedy, as illustrated by the trial court's refusal to hold a temporary orders hearing pending the completion of arbitration.

We have long held that an adequate remedy for a trial court's error in compelling the parties to arbitrate is available through an eventual appeal from a final judgment enforcing an arbitration award. *See, e.g.*, *In re Gulf Expl., LLC*, 289 S.W.3d 836, 838, 842 (Tex. 2009); *In re Palacios*, 221 S.W.3d 564, 565 (Tex. 2006). But the error here is not that the trial court reached the wrong conclusion regarding whether to compel arbitration. Rather, the error is that the trial court did not follow a statutory command—unique to the divorce context—that it try issues of validity and enforceability prior to ordering arbitration, and thus it reached no conclusion on those issues at all. *Cf. In re Poly-Am., L.P.*,

8

262 S.W.3d 337, 352-53 (Tex. 2008) (granting mandamus relief from order compelling arbitration under agreement that eliminated statutory remedies).

More importantly, we have recognized that a significant factor in evaluating the adequacy of an appellate remedy in divorce cases is that "[j]ustice demands a speedy resolution of child custody and child support issues." *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex. 1987). Thus, in *Proffer*, we granted mandamus relief to enforce a right to mandatory venue in a suit affecting the parent-child relationship even though an eventual appellate remedy was available. *See id*. Similarly, the trial court's error here in ordering arbitration without first determining the validity and enforceability of the parties' Agreement containing the arbitration clause has delayed resolution of child custody and support issues that the parties first sought to address through temporary orders over one year ago. In light of the trial court's decision to reserve setting any hearing on temporary orders and to stay all proceedings pending arbitration, we conclude that an eventual appeal from a final judgment would be an inadequate remedy.

Accordingly, without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant Ayad's petition for writ of mandamus. We direct the trial court to withdraw its order referring the parties' disputes to arbitration and to conduct further proceedings required by Sections 6.6015 and 153.00715 of the Family Code in accordance with this opinion. Our writ will issue only if the trial court does not comply.

**OPINION DELIVERED:** September 23, 2022

9